IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:12-cr-3 |
| v. | ) | |
| | ) | Hearing: April 13, 2012 |
| KIM DOTCOM, *et al.*, | ) | 10:00 a.m. |
| | ) | |
| Defendants. | ) | |

**RESPONSE OF THE UNITED STATES TO EMERGENCY MOTION FOR PROTECTIVE ORDER BY NON-PARTY CARPATHIA HOSTING, INC.**

Carpathia Hosting, Inc. ("Carpathia"), a former lessor to defendants of computer server space, has moved this Court for guidance on how to treat the property formerly leased by defendants (hereinafter, the "Carpathia Servers") in light of perceived discovery requirements in this criminal action and potential civil lawsuits that may involve disputes over data housed on those servers. But there is no authority that would permit this Court to rule prospectively on issues related to as-yet-unfiled civil lawsuits involving the Motion Picture Association of America ("MPAA") or the Electronic Frontier Foundation ("EFF"). With respect to the criminal case, the government previously filed notice on January 27, 2012 that it had completed its acquisition of evidence from the Carpathia Servers pursuant to a search warrant, and that the Carpathia Servers were – as of that point – no longer under the government's custody and control. The government stands ready to provide full discovery to the defendants in the criminal case consistent with the Federal Rules of Criminal Procedure, *i.e.* after the defendants have made their initial appearance before this Court. As such, the United States respectfully requests that the Court refrain from granting relief on what is, in essence, a request for declaratory judgment on a private contractual matter between Carpathia and the defendants.

I.   **Background**

On January 19, 2012, four defendants in the above-captioned matter were arrested in New Zealand pursuant to a request for mutual assistance from the government of the United States arising from a sealed Indictment. Shortly thereafter, a fifth defendant was arrested in the Netherlands. No arraignment date has been set, as all defendants are contesting extradition.

Simultaneous with the January 19, 2012 arrests, the United States and law enforcement partners across the globe executed various search warrants related to the case, including a search warrant at warehouses in the Eastern District of Virginia leased by Carpathia and housing the Carpathia Servers. Though not required to do so, a week later the United States notified all parties and this Court of events that occurred subsequent to January 19, 2012 by letter. *See* Letter from J. Prabhu to P. Davison, QC; I. Rothken, Esq.; and G. Foley, Barrister (Jan. 27, 2012) (Dkt. 32). First, the United States informed the parties that it had copied selected Carpathia Servers and copied selected data from other Carpathia Servers under the search warrant's authority. *Id.* Second, the government stated that it had completed execution of the search warrant and had "no continuing right to access" the Carpathia Servers. *Id.* The United States directed the defendants to contact Carpathia directly if they wished to arrange independent or third-party access to the Carpathia Servers. *See id.* And finally, the United States informed the parties that it had been informed that Carpathia may shortly begin to delete data and repurpose the Carpathia Servers. *See id.* Thereafter, the defendants' forensics team obtained third-party access to the Carpathia Servers. *See* Ex. D to Motion.

In the present Motion, Carpathia seeks Court intervention to "protect it from undue expense and burden" related to continued storage of data contained on Carpathia Servers. *Id.* at

1. Carpathia states that, "[i]n the ordinary course of Carpathia's business, when a customer such as Mega becomes unable to pay its service fees or is otherwise terminated as a customer, Carpathia would delete any data from the servers and then reprovision the servers for use by other customers or sell them on the secondary market." *Id.* at 2. Here, Carpathia indicated that it feels constrained from pursuing the "ordinary course" of reprovisioning because (1) the defendants claim both to "need the data preserved for its defense" and to intend to return the data to the respective uploaders; (2) the EFF has claimed an interest in facilitating the return of non-infringing files to uploaders; and (3) the MPAA, a victim in the criminal case, has requested preservation to facilitate potential civil claims against the defendants. *Id.* at 2-3.

Carpathia represents that, during the two-month period between the execution of the search warrant and the filing of its Motion, it was paying $9,000 per day to rent the facility housing the Carpathia Servers. *See id.* at 6. That lease has been terminated effective April 6, 2012, and Carpathia has arranged to move the Carpathia Servers to available space in a Carpathia-owned premises. *See id.* Carpathia claims an "ongoing allocated lease cost of over $37,000 per month." *Id.*; Ex. A to Mot. at ¶ 10. But the phrase "allocated lease cost" suggests that Carpathia is making *no* financial outlay for continued storage of the Carpathia Servers, and is merely recording an expense on its books.[1] Moreover, although Carpathia is unable to generate revenue from the Carpathia Servers at present, it does not follow, and would be incorrect to suggest, that Carpathia is losing revenue by housing the Carpathia Servers at otherwise vacant space at Carpathia-owned premises, until such time as a Carpathia customer wishes to lease that space.

---

[1] Carpathia also claims a "transportation cost of $65,000," but does not indicate whether that cost was an actual outlay or another allocated cost.

II.     **Argument**

    A.     **Carpathia's Motion Does Not Address a "Discovery Matter" in the Criminal Case**

Carpathia argues that the Court has authority pursuant to Federal Rule of Criminal Procedure 16(d)(1) to either order the government or defendants to take possession of the Carpathia Servers (and compensate Carpathia accordingly), or reimburse Carpathia for the "allocated cost" of storage, as well as costs of transporting the Carpathia Servers from Equinix facilities to Carpathia-owned facilities; or authorize Carpathia to pursue the "ordinary course" of its business and delete and reprovision the Carpathia Servers. *See* Mot. at 6, 9-10. But the criminal case is not yet in the discovery phase, which commences following arraignment, *see* Fed. R. Cr. P. 12(b)(4), and which has been delayed solely due to the defendants' unwillingness to submit to the jurisdiction of this Court. Moreover, the government has already completed its acquisition of data from the Carpathia Servers authorized by the warrant, which the defendants will be entitled to during discovery.[2] As such, there is no need (or basis) for the Court to order either the government or defendants to assume possession of[3] the Carpathia Servers or reimburse Carpathia for "allocated costs" related to their continued maintenance.

---

[2] In early February 2012, counsel purporting to represent the defendants in the United States speculated that exculpatory evidence is contained on Carpathia Servers not copied by the United States pursuant to the search warrant, which necessitates preservation. The government is unaware of any exculpatory evidence that would be destroyed through reprovisioning of the Carpathia Servers, but takes such allegations seriously. When pressed at a February 9, 2012 meeting, purported counsel conceded that they had never spoken with any of the defendants and that the assertion of possible exculpatory evidence was not based on any actual knowledge of the Carpathia Servers.

[3] While any transfer of the Carpathia Servers from Carpathia to the defendants is at root a private contractual matter, as Carpathia notes in its Motion, both the government and the MPAA have objected to such a transfer. *See* Mot. at 3. The MPAA's objections are based on an assertion that MPAA members are the legal owners of much of the data contained on those servers, and a

A defendant's entitlement to discovery, including discovery of evidence possessed by the government, arises following arraignment. *See* Fed. R. Cr. P. 12(b)(4) (noting government discretion to notify defendant of evidence, and defendant's right to request notice of government evidence, "[a]t the arrraignment or as soon afterward as practicable"). This rule is consistent with Federal Rule of Criminal Procedure 16, which governs discovery in criminal matters and which contemplates *reciprocal* discovery. *Compare* Fed. R. Cr. P. 16(a) (Government's Disclosure) *with* Fed. R. Cr. P. 16(b) (Defendant's Disclosure). As noted above, the government stands ready to provide full discovery to the defendants in the criminal case consistent with the Federal Rules of Criminal Procedure.[4]

Carpathia argues that compensation or forced transfer of the Carpathia Servers is appropriate because preservation or production of the Carpathia Servers pursuant to a subpoena would be "unreasonable or oppressive" under Federal Rule of Criminal Procedure 17(c), *see* Mot. at 7-8, but that argument is inapposite for two reasons. *First*, Carpathia was not served with a trial subpoena by either party (which requires *it* to collect and produce data), but a search

---

concern that the *unrestricted* transfer contemplated by the agreement that Carpathia and the defendants initially entered creates a real risk that the defendants will seek to transfer the Carpathia Servers out of this court's jurisdiction (for example, overseas) or use them for an improper commercial purpose (for example, to attempt to reestablish criminal activity). *See* Response of MPAA Member Studios to Emergency Motion for Protective Order Filed by Non-Party Carpathia Hosting, Inc. 4-5 (Apr. 2, 2012) (Dkt. 54). The government shares these concerns, and is additionally concerned because it has not seen any detailed plans for appropriately transferring the Carpathia Servers to an entity that demonstrates reasonable and untainted resources for that purpose, provides sufficient safeguards regarding access, successfully deals with the specific concerns of victims, and deals appropriately with the contraband and other illegitimate files on the Carpathia Servers. As part of these additional concerns, the government recently learned from multiple sources that the Carpathia Servers may contain child pornography, rendering the Carpathia Servers contraband and further complicating any potential transfer from Carpathia to the defendants.

[4] During discovery, the defendants will be entitled to the data from the Carpathia Servers obtained by the government during execution of the search warrant. *See* Fed. R. Cr. P. 16(a)(E).

warrant (which requires it to provide physical access to the government, with *the government bearing the burden of identifying and collecting data*).  *Second*, as the government's letter of January 27, 2012 made clear, the government relinquished possession of the Carpathia Servers and imposed *no continuing obligations* on Carpathia related to the Carpathia Servers after it completed its execution of the search warrant.  Carpathia points to no case law awarding relief to a third party that has preserved data previously subject to a search warrant for reasons unrelated to the criminal case.[5]  As such, there is no basis for ordering the government or the defendants to pay for[6] or assume possession of property that is not subject to any legal process related to the criminal proceeding.

>   B.   **Carpathia's Concerns Over Potential Civil Liability Are Not Properly Before This Court**

In addition to the perceived discovery needs of the criminal case, Carpathia seeks the Court's intervention as a shield against potential liability in as-yet-unfiled civil lawsuits involving the MPAA (on behalf of victims of copyright infringement) or the EFF (on behalf of "innocent users" of the Megaupload.com website).  This Court, which has jurisdiction only over

---

[5] *United States v. Salad*, 779 F. Supp. 2d 503 (E.D. Va. 2011), relied on by Carpathia (*see* Mot. at 4), is distinguishable because there, the *defendant* was the party seeking relief, for the purpose of allowing counsel and any necessary experts to inspect the yacht upon which the alleged crimes occurred, and over which the United States still had possession.  *See id.* at 504, 507.  Here, in contrast, a third party is requesting relief, related to property that the United States relinquished possession of two months ago, and which the defendants' forensics experts have already had the opportunity to inspect.  Furthermore, whereas in *Salad*, the best the government could offer in discovery was photographs and videos of the yacht, *see id.* at 505, here, the government has made exact forensic copies of data from the Carpathia Servers, which the defendants will have the opportunity to inspect.

[6] Even if Carpathia were entitled to some form of compensation for preserving the Carpathia Servers, it would be improper to compensate Carpathia out of seized assets, which may eventually be restored to victims as restitution.  *See* 21 U.S.C. § 853(i)(1).  *See also id.* § 853(i)(5) (authorizing Attorney General to "take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition").

the criminal proceeding, may not rule on speculative matters affecting civil lawsuits that have not yet been filed (and may not be filed at all), and Carpathia cites no authority allowing the Court to do so.  As Carpathia points out, the MPAA would have the ability to request evidence collected by the government in the criminal case if and when it opted to file a related civil case. *See* Motion at 3 n.7.  Moreover, the "innocent user" concerns articulated by Carpathia – and expanded upon in the supporting brief of Kyle Goodwin[7] - appear to be undermined by Megaupload.com's own terms of service (and "Frequently Asked Questions" section), which cautioned uploaders not to keep the sole copy of any document on Megaupload.com, and stated that Megaupload.com's duty to preserve data ends when, at its sole discretion and without any required notice, Megaupload.com ceases operations.  *See* Indictment at 5 n.1 (Dkt. 1).  While Mr. Goodwin's situation is unfortunate, it is not a matter to be resolved as part of the criminal case.  To the extent uploaders believe they have a legal claim related to potential data deletion or reprovisioning of servers, they may seek relief from Carpathia directly or through a civil court claim.

---

[7] Brief of Interested Party Kyle Goodwin in Support of Emergency Motion for Protective Order by Non-Party Carpathia Hosting, Inc. and for Additional Relief (Mar. 30, 2012) (Dkt. 51).

## **CONCLUSION**

For these reasons, the United States respectfully requests that the Court deny Carpathia's motion for a protective order.

Dated:  April 2, 2012                                      Respectfully submitted,

                                            Neil H. MacBride
                                            United States Attorney

By:     /s/ Lindsay A. Kelly
       Lindsay A. Kelly
       Jay V. Prabhu
       Assistant United States Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of April, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) to the following:

Christopher L. Harlow, Esq.
SNR Denton US LLP
1301 K St NW, Suite 600, East Tower
Washington, DC 20005
202-408-6816
christopher.harlow@snrdenton.com

*Counsel for Carpathia Hosting, Inc.*

Julie Moore Carpenter, Esq.
Jenner & Block LLP
1099 New York Ave, NW, Suite 900
Washington, DC 20001-4412
(202) 639-6000
jcarpenter@jenner.com

*Counsel for Motion Picture Association of America*

John S. Davis, Esq.
Williams Mullen
200 South 10th Street, 16th Floor
Richmond, VA 23219
(804) 420-6296
jsdavis@williamsmullen.com

*Counsel for Kyle Goodwin*

Griffith L. Green, Esq.
Sidley Austin Brown & Wood LLP
1501 K St NW
Washington, DC 20005
(202) 736-8000
ggreen@sidley.com

*Counsel for Sidley Austin LLP and The Rothken Firm*

 /s/  Lindsay A. Kelly
Lindsay A. Kelly
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tele: 703-299-3700
Fax: 703-299-3981
lindsay.a.kelly@usdoj.gov